UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY BARTON, TRUSTEE, | ) | |
| INDIANA TEAMSTERS HEALTH | ) | |
| BENEFITS FUND, and | ) | |
| INDIANA TEAMSTERS HEALTH | ) | |
| BENEFITS FUND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-572-RLY-DKL |
| | ) | |
| HORN PRE-CAST, INC., and | ) | |
| DEVENING BLOCK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
PERMANENT INJUNCTION**

Plaintiffs, Indiana Teamsters Health Benefits Fund ("the Fund") and Danny Barton, Trustee of the Fund (collectively, "Plaintiffs"), filed suit against Defendants, Horn Pre-Cast, Inc. ("Horn") and Devening Block, Inc. ("Devening") (collectively, "Defendants"). In Count I, Plaintiffs allege Defendants' failure to make regular contributions to the Fund, as mandated in their collective bargaining agreements ("CBAs"), violates the Employee Retirement Income Security Act of 1974 ("ERISA"). In Count II, Plaintiffs allege Horn breached its obligations under a promissory note it entered into with the Fund. Plaintiffs now move for summary judgment and a permanent injunction on Count I and to dismiss Count II. Plaintiffs' motion to dismiss Count II is

1

**GRANTED**, and for the reasons set forth below, the motion for summary judgment and for permanent injunction is **GRANTED**.

## I.     Factual Background and Procedural History

Defendants entered into identical three-year CBAs with their employees' representatives, the Chauffeurs, Teamsters, Warehousemen, and Helpers, Local Union No. 135 ("Teamsters"), effective June 1, 2009.  (Plaintiffs' Exs. A and B).  Pursuant to the CBAs, Defendants must make regular contributions on behalf of their employees to the Fund, a multi-employer employee benefit plan (Affidavit of Ray Simpson ("Simpson Aff.") ¶¶ 3-4) and make regular reports to the Fund listing covered employees and the hours they worked.  (Plaintiffs' Ex. E at 6-7).  These contributions and reports are governed by a Trust Agreement between the employers and the Fund.  (*See* Plaintiffs' Ex. E).

Devening stopped contributing to the Fund after May 29, 2010, and Horn stopped contributing to the Fund after September 25, 2010.  (Affidavit of Harry E. Horn, Jr. ("Horn Aff.") ¶ 4;).  Defendants submitted reports but did not contribute to the Fund through June 2011 (Simpson Aff. ¶¶ 6-7) and made inconsistent reports to the Fund after June 2011.  (Supplemental Affidavit of Ray Simpson ("Simpson Supp. Aff.") ¶¶ 5-6; *see also* Plaintiffs' Exs. F and G).  Plaintiffs terminated Defendants' employees' health insurance coverage on the dates of their last payments (Affidavit of Glen E. Schurman, Jr. ("Schurman Aff.") at 3; Affidavit of Larry Hardin ("Hardin Aff.") at 3) and did not pay any health claims submitted by Defendants' employees.  Devening and Horn were delinquent in their contributions in the amounts of $74,560 and $47,475, respectively,

through June 2011. (Simpson Aff. ¶¶ 6-7). Defendants agreed to pay the third party medical expenses incurred by employees and families during the time when they did not make premium payments, and claim to have paid all employee-submitted medical claims through November 7, 2011. (Horn Aff. ¶¶ 5-7; Affidavit of Melissa Boesken ("Boesken Aff.") ¶¶ 5-7).

Plaintiffs sued for actual damages, liquidated damages of 10% of the total delinquency, statutory interest on delinquent payments, attorney fees, costs, and a permanent injunction to compel timely future contributions. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Stated differently, only disputes over material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will preclude the entry of summary

judgment. *Id*. at 248. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Id*. at 255.

**III.     Discussion**

        **A.     Duty to Pay Contributions**

ERISA Section 515 requires any employer obligated under the terms of a CBA to make contributions to an employee benefits fund to comply with those terms. 29 U.S.C. § 1145. Pursuant to the CBAs, Trust Agreement, and the Teamsters' Policies for the Collection of Delinquent Employer Contributions and Payroll Audits ("Fund Policies"), Defendants were obligated to submit to the Fund their required contributions (Plaintiffs' Ex. A at 13-14; Plaintiffs' Ex. B. at 12-13) and a monthly contribution report listing employees and hours worked. (Plaintiffs' Ex. H at 2). It is undisputed that Defendants failed to make the required contributions for much of the time in question. Plaintiffs used the reports filed by Defendants to calculate the unpaid funds through June 2011.[1] (Simpson Aff. ¶¶ 5-7; Plaintiffs' Exs. C and D).

Defendants raise three main arguments as to why they should not be held fully liable: (1) because they withdrew from the benefits plan, they do not owe Plaintiffs any money; (2) even if they owe some money, their liability should be offset by the medical expenses and payroll deductions they reimbursed their employees; and (3) because

---

[1] Defendants claim that the reports (Plaintiffs' Exs. C, D, F, and G) are prepared by Plaintiffs initially and forwarded to Defendants. (Horn Aff. ¶ 3; Boesken Aff. ¶ 4). However, whether Plaintiffs or Defendants prepared the reports does not change the outcome of the case.

Plaintiffs incurred no costs for Defendants' employees healthcare, they are not entitled to the delinquent contributions.

### 1.   Do Defendants' Withdrawals Terminate Their Contribution Obligations?

Defendants claim that they withdrew from the plan when their employees' coverage terminated (Horn Aff. ¶ 14), and therefore "there are no monies due to Plaintiffs from Defendants." (*Id.* ¶ 15). Moreover, they claim the reports for November 2011 through May 2012, prepared initially by Plaintiffs (*Id.* ¶ 3; Boesken Aff. ¶ 4), show no monies due. (Plaintiffs' Ex. F at 3-8; Plaintiffs' Ex. G at 4-9). This, they opine, is further evidence of the Defendants' withdrawals from the plan. They argue that because no services and benefits were provided or borne by Plaintiffs after Defendants withdrew, Plaintiffs cannot recover any money from Defendants.

Defendants' argument is not supported by case law. In *Cent. States, Southeast and Southwest Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, the Seventh Circuit upheld the lower court's invalidation of a provision of a new CBA between a union and employer that abrogated the employer's responsibility to contribute to an ERISA-governed pension fund prior to the old CBA's expiration. 674 F.3d 630, 633-34, 637 (7th Cir. 2012). This provision directly contravened the Participation Agreement provision that the union, employer, and Plaintiff pension fund entered into, which expressly forbade this abrogation of contribution and required any changes in the CBA to be submitted to Plaintiff. *Id.* at 633. In so doing, the Court affirmed the principle that "[w]here the terms

5

of a plan document are unambiguous, we will not look beyond its four corners in interpreting its meaning." *Id*. at 634 (internal quotation omitted).

The CBAs between the Teamsters and Defendants were to be in operation from June 1, 2009, until May 30, 2012. (Plaintiffs' Exs. A and B). The health insurance language allows for annual reopening of the agreement "for the sole purpose of establishing the rate, which the employer and employee (co-pay) will be required to contribute to the [Fund] and the hourly wage. . . . The remainder of this agreement shall remain in effect during the course of negotiations." (Plaintiffs' Ex. B at 12; *see also* Plaintiffs' Ex. A at 13)). Even though the CBA Articles discussing Fund Contributions do not expressly prohibit limiting or terminating employer contributions while the CBAs are in effect, the CBA language is unambiguous that the contribution requirements are binding for the duration of the agreement, remaining in effect even if the contribution rates change. Further, ERISA section 515 imposes a clear legal obligation to make contributions pursuant to the terms of any binding plan or agreement. 29 U.S.C. § 1145. Finally, the Defendants' withdrawals were not collectively bargained, so their attempts to abrogate their contribution obligations are viewed less favorably than the attempt by the employer in *Waste Mgmt. of Mich.*

Defendants cite to section 2.6 of the Trust Agreement, which states that employees are no longer eligible for health insurance coverage under the Trust if employers withdraw from the Plan. (Plaintiffs' Ex. E at 5). However, this is properly read as a contingency plan to protect the Fund when an employer withdrawal, authorized or not, occurs, not an implicit authorization for employers to unilaterally withdraw. Defendants

6

do not point to any provision in the Trust Agreement or CBAs that allows for them to unilaterally withdraw from the Plan, nor do they claim that the portions of the Trust Agreement provided in Plaintiffs' Exhibit E are ambiguous or incomplete. The court therefore concludes that the Defendants were not authorized to withdraw from the Plan.

### 2. Are Defendants Entitled to Offset for Reimbursements They Made to Employees?

Defendants claim that they have reimbursed all medical expenses for their employees that would have been paid by the Fund under the Plan and that they reimbursed current employees the monies that were deducted from their respective paychecks for contributions to the Fund.[2] Therefore, they opine, if they are found to be liable for delinquent payments to the Fund, their liability should be offset by the payments and reimbursements already made.

Defendants' argument is erroneous as to both payments and reimbursements. Defendants do not point to a provision of the CBAs or Trust Agreement that allows them to offset their contributions to the Fund based on benefits paid to employees, nor do they cite a provision allowing Defendants to deduct a portion of any Fund contributions for which they reimbursed employees. The relevant language states that "the employer [Horn] shall contribute to the Indiana Teamsters Health Benefits Fund Two Hundred [*sic*] Dollars ($240.00) per week for each employee. . . Employees will reimburse the

---

[2] As part of the CBAs, Defendants were allowed to deduct the employees' contribution to their Fund payments from their employees' paychecks ($6 out of the $200 or $240 paid per Horn employee in 2009 (Plaintiffs' Ex. A at 13) and $15 of the $245 paid per Devening employee in 2009). (Plaintiffs' Ex. B at 12).

7

Employer six dollars $6.00 per week through payroll deductions." (Plaintiffs' Ex. A at 13).[3] These statements are unambiguous as they pertain to whom the Defendants should pay—the Fund—or whether Defendants are responsible for the entire payment to the Fund—they are. Therefore, this court cannot go outside the document's four corners to consider any evidence that offset for such payments was intended by the parties. The Defendants are responsible for the entire Fund payment. While they may concurrently or subsequently seek reimbursement through payroll deductions, the employees are not liable for Fund contributions. Any reimbursement of those deductions made to employees does not change the amount of money owed to the Fund by Defendants. Defendants are therefore not entitled to offset.

### 3. Whether Plaintiffs Are Entitled to Payment

Defendants argue that because Plaintiffs dropped Defendants' employees from the coverage and incurred no costs, they cannot be paid for the services and benefits not rendered or incurred by Plaintiffs. Defendants' argument fails for two reasons. First, as stated *supra*, Defendants are not entitled to offset any medical claims they paid, nor were they permitted to withdraw from the Plan. Therefore, Plaintiffs have suffered a loss due to the required funds not being paid into the multi-employer Fund. Plans may enforce the terms of contribution agreements "without regard to understandings or defenses applicable to the original parties." *Cent. States, Southeast & Southwest Areas Pension*

---

[3] For Devening, the language was "Two Hundred Forty five dollars ($245.00) per week for each employee or as stated on Appendage 'A'. Effective July 15, 2009, Employees will reimburse the employer fifteen dollars ($15.00) per week through payroll deductions." (Plaintiffs' Ex. B at 12).

*Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989). Therefore, Plaintiffs have the statutory authority to seek full reimbursement.

In summation, this court finds that Defendants' unilateral withdrawals from the Plan were unauthorized. They must pay 100% of their delinquent contributions to Plaintiffs irrespective of any refunded contributions or reimbursed medical expenses paid to their employees. These amounts include: $74,560 from Devening, $47,475 from Horn (Simpson Aff. ¶¶ 6-7), and the Defendants' respective delinquencies from July 2011 onward. The latter amounts will be determined by the parties by stipulation or supplemental discovery, if necessary.

### B. Additional Damages

In addition to the delinquent payments, Plaintiffs also seek interest, liquidated damages amounting to 10% of the total delinquency, administrative costs, and attorney fees. ERISA sections 502(g)(2)(B) and 502(g)(2)(D) allow a successful fiduciary to recover interest, costs, and attorney's fees. 29 U.S.C. §§ 1132(g)(2)(B), (g)(2)(D). Plaintiffs, as stated *supra*, are successful in enforcing the CBAs and Trust Agreement terms; the court therefore grants Plaintiffs' prayer for interest at the statutory rate, attorney's fees, and costs and further grants their request to establish those fees and costs at the conclusion of the litigation.

ERISA section 502(g)(2)(C) allows for a successful party to receive: an amount equal to the greater of—

> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

9

>     Federal or State law) of the amount determined by the court under
>     subparagraph (A) [the unpaid contributions].

29 U.S.C. § 1132(g)(2)(C). Plaintiffs claim that pursuant to the Trust Agreement, they are permitted to recover liquidated damages of 10% of the unpaid contributions (Simpson Aff. ¶ 8), and indeed Clause 3.3 of the Trust Agreement authorizes the collection of liquidated damages and fees for delinquent contributions. (Plaintiffs' Ex. E at 6). While Defendants rejoin that Plaintiffs have not cited or produced anything in the Trust Agreement that explicitly mandates 10% liquidated damages, Plaintiffs counter that the Fund's 2008 collection policy explicitly authorizes 10% liquidated damages for a late contribution. (Plaintiffs' Ex. H at 2). 10% damages were upheld by the United States Supreme Court in *United States for the benefit of Sherman, et al., Trustees v. Carter, et al.* (353 U.S. 210, 214, 220-21 (1957)), and the law's cap of 20% (29 U.S.C. § 1132(g)(2)(C)(ii)) suggests that a 10% liquidated damages rate is reasonable. The court therefore grants Plaintiffs liquidated damages in the amount of 10% of unpaid contributions.

### C.     Permanent Injunction

Finally, Plaintiffs request "[a] permanent injunction enjoining Defendants from failing, neglecting, and refusing to make their required contributions to the Fund as they fall due." (Amended Complaint at 4). Among the factors considered in deciding to grant injunctive relief are: whether the moving party will suffer irreparable harm; possibility of injury to the opposing party; adequacy of a remedy at law; likelihood of success on the

merits; and public policy considerations. *Gould v. Lambert Excavating*, 870 F.2d 1214, 1217-18, 1221 (7th Cir. 1989).

Plaintiffs argue the permanent injunction is necessary because Defendants have not paid into the Fund since their respective withdrawal dates. The injunction, they claim, will save Plaintiffs administration costs in ensuring the funds are promptly paid and this court from the costs and hassle of new lawsuits being filed periodically to collect delinquent payments. This would be particularly important since Plaintiffs intend to restore the health insurance benefits as soon as Defendants resolve their delinquencies to the Fund. (Affidavit of Patricia Wilson ("Wilson Aff.") ¶ 7). Finally, Defendants' chronic delinquency should itself be sufficient grounds to warrant an injunction.

Defendants object to the permanent injunction on several grounds. First, they claim that no money is due because of their withdrawals from the plan. This argument fails because, as discussed *supra*, the withdrawals breached the CBAs and were therefore not authorized. Second, the current CBAs expired on May 30, 2012, and the Teamsters have refused to negotiate new agreements until this matter is resolved. Therefore, Defendants claim there is no binding agreement compelling future contributions. Defendants' claim does not square with the CBA provisions. In both CBAs, a party seeking to terminate the agreement must give written notice at least 60 days prior to the expiration and engage in good-faith bargaining and, if necessary, mediation in negotiating a new CBA. (Plaintiffs' Ex. A at 20; Ex. B at 19). There are evergreen clauses that extend the agreements until new CBAs are reached or the current CBAs are terminated pursuant to the notice and negotiating process. (Plaintiffs' Ex. A at 20-21; Ex.

B at 19-20). Defendants do not claim to have given written notice of their intent to terminate or modify to Plaintiffs. The CBAs are therefore still in effect, and Defendants are still obligated to make payments to the Fund.

Finally, Defendants' arguments that these payments will cause irreparable harm to Defendants and their employees are irrelevant to the fact that the CBAs compel their payments. As with the issue of unpaid contributions, Defendants cite no case law in support of their arguments.

In *Gould*, the Seventh Circuit held that a court could not, as a matter of law, grant a preliminary injunction against an employer violating ERISA without considering whether the movant would suffer irreparable harm. 870 F.2d at 1221. However, the Court held that the trial court's error was inconsequential because the employer did not dispute the trial judge's finding that actuarial soundness of funds was jeopardized by employer's nonpayment. *Id*. at 1217, 1221-22. Plaintiffs' argument of irreparable harm is not explicitly stated and is limited to statements: that the Fund "relies upon the contributions of all participating employers" (Wilson Aff. ¶ 8); "[a]ll employer contributions are placed into a single trust fund [*sic*] that are used to pay all Plan claims" (*id*.); that participating employers must finance collection activities (Simpson Aff. ¶ 9); and that these activities cost the Fund money and its employees' time. *Id*. However, their argument is not challenged by Defendants.

Moreover, the other factors weigh heavily in Plaintiffs' favor. This court already finds Defendants liable for 100% of the unpaid funds; further litigation to recover any amounts unpaid between the entry of this judgment and expiration of the CBAs would

likely result in an identical finding.  Because the CBAs remain in effect through the evergreen clauses, payments must be made.  *See Central States, Southeast and Southwest Areas Pension Fund v. Auffenburg Ford, Inc.*, 637 F.3d 718, 720-21 (7th Cir. 2011).  Thus, the likelihood of Plaintiffs being successful on the merits is very high, and in these circumstances repeatedly awarding delinquent contributions going forward is inferior to a permanent injunction.  ERISA's broad grant of standing to enforce rights and obligations of plans (29 U.S.C. § 1132(a)) shows strong public policy concern in ensuring plan terms are enforced.  As stated above, the court is not persuaded that the alleged harm to Defendants warrants denying the injunction.  Any intention on their part to remove the health insurance provision or any provision pertaining to the Fund must be collectively bargained going forward; it does not change their obligations so long as the CBAs remain in effect.  Therefore, Plaintiffs' motion for a permanent injunction is granted until and unless the CBAs are terminated or modified with respect to Fund contributions.

### IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment and permanent injunction (Docket # 37) is **GRANTED** in its entirety.  Defendants are hereby ordered to pay all unpaid contributions, liquidated damages of 10% of the total unpaid funds, pre-judgment statutory interest for each delinquent payment, attorney's fees, and costs.  Defendants are further compelled to make regular contributions and reports to the

Fund so long as the CBAs require Defendants to do so.

**SO ORDERED** this 19th day of November 2012.

                                                          RICHARD L. YOUNG, CHIEF JUDGE
                                                          United States District Court
                                                          Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.